**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

_____X
In re:                                :
                                      :
Daniel E. Aravena,                    :
                                      :      Chapter 7
         Debtor                       :      Case No. 09-51498
_____X
Robert Osborne, Patricia Osborne,     :
Robert Osborne & Patricia Osborne,    :
as Next of Friend for Frederick Osborne, :
a Minor,                              :
         Plaintiffs,                  :
                                      :
         vs.                          :      Adv. Pro. No. 09-5055
                                      :
Daniel E. Aravena,                    :
                                      :
         Defendant.                   :
_____X

*Appearances:*

| | | |
|---|---|---|
| John Lino Ponzini, Esq. | : | For the Plaintiffs |
| Brandner & Ponzini | : | |
| 24 Hoyt Street | : | |
| Stamford, CT | : | |
| | | |
| Aaron Romney, Esq. | : | For the Debtor/Defendant |
| Zeisler & Zeisler, P.C. | : | |
| 558 Clinton Avenue | : | |
| Bridgeport, CT | : | |

**MEMORANDUM OF DECISION AND ORDER ON
PLAINTIFFS' AMENDED § 523(a)(2)(A) COMPLAINT**

The plaintiffs[1] seek a determination that an alleged debt owed to them by the defendant is not dischargeable. For the reasons that follow, judgment shall enter in favor of the defendant.

## Background

On July 31, 2009, the defendant commenced this chapter 7 case. In his schedules, he listed a 100% ownership interest in DNR Painting Company, LLC ("DNR Painting"), which was "not operating". ("Schedule B – Personal Property" at ¶13 (ECF No. 1 at 11).) He also listed, among other unsecured, nonpriority claims, a $500,000 contingent, unliquidated, disputed claim by the plaintiffs, which was described as a "Lawsuit - business debt". ("Schedule F – Creditors Holding Unsecured Nonpriority Claims" (ECF No. 1 at 22).) He was granted a discharge of dischargeable debts on November 5, 2009.

On October 23, 2009, plaintiffs commenced this adversary proceeding, asserting one cause of action, "Violation of 11 USC § 523(a)(2)(A)", for a determination that the defendant's alleged $60,000 debt to them was nondischargeable. (*See* Complaint at 2, 4 (ECF No. 1).) On June 2, 2010, they filed the instant amended complaint which arises from a February 27, 2007 house-painting contract with DNR Painting. (*See* Trial Exhibit A.) Pursuant to that contract, DNR Painting was to scrape and sand all loose and peeling paint in preparation for staining and painting the plaintiffs' residence located at 1303 High Ridge Road, in Stamford, Connecticut (hereafter, the "job site").

According to plaintiff Mrs. Osborne's testimony:

1. she presumed there could be lead present because the house was old, but she did not discuss her concerns about lead in the paint with the defendant;
2. she did not discuss with the defendant testing the paint to determine if it was lead-based;

---

[1] While the caption of this adversary proceeding indicates that plaintiffs are Mr. & Mrs. Osborne individually and on behalf of their minor son, who at all relevant times was an infant, there was only one mention of the son at trial. Therefore, references to the plaintiffs will refer to Mr. & Mrs. Osborne.

3. the defendant never represented that he would test the paint;

4. she did not discuss with the defendant whether he held any licenses necessary to perform the painting job, but she did see in his marketing materials that he did have a license of some sort; and

5. the defendant did not represent himself to be an experienced lead-abatement contractor.

Nov. 17, 2011 Trial Hr'g, audio recording (start play time: 12:11:00 pm).  She further testified that she was at the job site on the morning when the defendant first arrived there, but then left for the day.  When she returned in the early afternoon, there were paint dust and chips covering the bushes, shrubs, the foundation around the home, and the contents of the garage.  She claimed that there were no attempts to cover those areas.  She also testified that she was upset and discussed her displeasure with the defendant, who assured her he could clean the job site.  When, on the next day, she was dissatisfied with the defendant's clean-up attempts, she fired him.

The plaintiffs hired another contractor.  It is uncontested that it cost them approximately $7,000 to have the job completed.  They also had paint chips tested for lead.  When the test came back positive, the plaintiffs contacted the Connecticut Department of Environmental Protection, which, after investigation, issued a "Notice of Violation" to DNR Painting.  (*See* Pls.' Trial Exhibit B.)  Further, the uncontested evidence establishes that the plaintiffs incurred costs of $33,600 for remediation work at the job site.

Thereafter, the plaintiffs commenced a negligence action in a superior court of the State of Connecticut against the defendant, DNR Painting, and the defendant "d/b/a DNR Painting", alleging negligent sanding of the exterior of their house.[2]  On October 27, 2008, the plaintiffs amended that complaint to allege three cause of action: negligence, strict liability, and gross recklessness.  There were no allegations of fraud, nor were there any allegations of alter-ego or piercing the corporate veil to connect the

---

[2] It is unclear from the record when, prior to the commencement of this chapter 7 case, the plaintiffs brought that action.

defendant in this adversary proceeding to any liability of DNR Painting. On June 1, 2009, the plaintiffs applied to the state court for a prejudgment remedy of attachment in the amount of $500,000.[3] The defendant's July 31, 2009 bankruptcy filing stayed the state court action.

In this adversary proceeding, the plaintiffs' amended complaint added three paragraphs, asserting four factual allegations: the defendant had no experience performing lead abatement; he was not licensed to do so; he did not inform the plaintiffs of those facts; and he "misrepresent[ed] that he would not be attempting to remove any lead based paint" (hereafter, the "Factual Allegations"). (*See* Amended Complaint, ¶¶ 9-11 (ECF No. 22).) The issue identified at the November 17, 2011 trial was whether the omissions asserted in those Factual Allegations constitute a basis for the nondischargeability of a debt in the context of a § 523(a)(2)(A) action.

## Discussion

As an initial matter, there is no evidence that the plaintiffs are creditors of the debtor. *See generally In re Friedberg*, 2012 WL 966940, *2-3, slip op. (Bankr. D. Conn. Mar. 21, 2012) (claimant has ultimate burden of persuasion to establish it has a claim against the debtor). As noted, their contract was with DNR Painting, a separate legal entity. No claim has been made or evidence offered in this adversary proceeding that the defendant was the alter-ego of DNR Painting, warranting the piercing of the corporate veil to hold the defendant liable for any damages determined to be owed to the plaintiffs by DNR Painting. On that basis, judgment would enter in the defendant's favor.

The same result follows even if the defendant were determined to be the alter-ego of DNR Painting and might therefore be indebted to the plaintiffs. The public policy promoted by bankruptcy allows "honest but unfortunate" debtors an opportunity to reorder their financial affairs and obtain a fresh start. *Cohen v. de la Cruz*, 523 U.S

---

[3] This is the basis for the defendant listing the plaintiffs' claim at $500,000, but as "contingent, unliquidated, [and] disputed". *See, supra*, p.2.

213, 217 (1998). That policy is accomplished by, *inter alia*, a discharge of certain preexisting debts. See § 523(a). The party objecting to the discharge of a debt bears the burden of proof by a fair preponderance of the evidence that the requirements of the relevant subsection, here § 523(a)(2)(A), have been satisfied. See Fed. R. Bankr. P. 4005; *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *In re Pierce*, 323 B.R. 21, 27 (Bankr. D. Conn. 2005). "[E]xceptions to dischargeability are narrowly construed, an approach that implements the fresh start policy of the Bankruptcy Code." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Bonnanzio (In re Bonnanzio)*, 91 F.3d 296, 300 (2d Cir. 1996).

In relevant part, § 523(a) provides:

> A discharge under section 727 . . . does not discharge an individual debtor from any debt—
>> (2) for money . . . to the extent obtained, by—
>>> (A) false pretenses, a false representation, or actual fraud
>>>> . . . .

11 U.S.C. § 523(a)(2)(A).

"False pretenses" are defined as "conscious deceptive or misleading conduct calculated to obtain, or deprive, another of property." *Lubit v. Chase (In re Chase)*, 372 B.R.125, 128, (Bankr. S.D.N.Y. 2007). False pretenses involve implied misrepresentations. *See In re Miller*, 282 B.R. 569, 575 (Bankr. D. Conn. 2002); *see also Chase*, 372 B.R. at 128. It is an act "designed to convey an impression *without an oral representation*." *Chase*, 372 B.R. at 128 (emphasis added; further citation omitted).

> In order to establish that a debt is nondischargeable as a debt for money obtained by false pretenses, the plaintiff must establish (1) an implied misrepresentation or conduct by the defendant; (2) promoted knowingly and willingly by the defendant; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiff; (4) which wrongfully induced the plaintiff to advance money, property, or credit to the defendant.

*Id.* (citing Sandak v. Dobrayel (In re Dobrayel), 287 B.R. 3, 12 (Bankr. S.D.N.Y 2002)).

The plaintiffs have not presented any evidence that supports a finding that the defendant made any implied misrepresentations or engaged in any conduct that fostered a false or misleading impression with respect to licensing. Not only was there no implied misrepresentation, there was no representation at all. As noted, *supra*, pp. 2-3, plaintiff Mrs. Osborne testified that although she was concerned about the possibility of lead-based paint, she never discussed licensing with the defendant. Nor did he ever raise the subject, which could have led to "a contrived and misleading understanding of the transaction on the part of the plaintiff." *Chase*, 372 B.R. at 128.

In contrast, a "false representation" deals with *expressed* misrepresentations, whether oral or written. *See id.* (citing *Bobilya Chrysler v. Gross (In re Gross)*, 175 B.R. 277 (Bankr. N.D. Ind. 1994)). The "false representation" component of the § 523(a)(2)(A) analysis is not at issue here since the plaintiffs do not rely on it, but rather allege a "'false pretense' or 'actual fraud' under § 523(a)(2)(A)". (Pls.' Post-Trial Memo. at 1 (ECF No. 67).) Yet, even if that text of the amended complaint were read to include that claim, there is no evidence to support it. Mrs. Osborne has conceded the defendant never expressly claimed, either orally or in writing, to be a licensed lead-abatement contractor.

"Actual fraud" generally requires proving "(1) a misrepresentation, (2) fraudulent intent, or scienter, (3) intent to induce reliance, (4) justifiable reliance, and (5) damage." *Chase*, 372 B.R at 130 (citing RESTATEMENT (SECOND) OF TORTS, § 525; *Weiss v. Alicea (In re Alicea)*, 230 B.R. 492, 500 (Bankr. S.D.N.Y. 1999)). It is "any intentional deceit, artifice, trick, or design used to circumvent and cheat another, *i.e.*, something said, done, or omitted with the design of perpetrating what is known by the debtor to be a deception." *Miller*, 282 B.R. at 575. The plaintiffs offered no persuasive evidence from which it could reasonably be found that the defendant's omission to disclose that he was not a licensed lead-abatement contractor was for the "specific design of perpetrating a known deception." *Id.* Nor, having observed the testimony of the witnesses and assessed their credibility, is there any basis for the court to reach that conclusion.

**Conclusion**

For the foregoing reasons, the plaintiffs having failed to satisfy their burden of proving the elements of § 523(a)(2)(A),

**IT IS ORDERED** that judgment shall enter in favor of the defendant.

Dated this 20th day of April 2012 in Bridgeport, Connecticut.

By the court

Alan H. W. Shiff
United States Bankruptcy Judge